# In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-2613 & 07-2684

MARGARET J. STILWELL, HALEY STILWELL,
HEIDI STILWELL, JAMIE STILWELL, and MEGAN STILWELL,

*Plaintiffs-Appellants,*

*v.*

AMERICAN GENERAL LIFE INSURANCE COMPANY,

*Defendant, Third-Party Plaintiff,*
*Appellee, Cross-Appellant,*

*v.*

FIRST MID-ILLINOIS BANK & TRUST,
TUSCOLA FURNITURE GROUP, LLC,
and JANKO FINANCIAL GROUP, LLC,

*Third-Party Defendants, Cross-Appellees.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 05 C 2160—**Michael P. McCuskey**, *Chief Judge.*

ARGUED JANUARY 22, 2008—DECIDED FEBRUARY 5, 2009

Before EASTERBROOK, *Chief Judge*, and WOOD and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Margaret Stilwell sued American General Life Insurance Company for breach of contract, challenging the validity of a reassignment of her interest in a $4 million life-insurance policy on the life of her husband, James. To secure debt used to finance one of her husband's businesses, Mrs. Stilwell made two assignments of the policy to Janko Financial Group, L.L.C., each in the amount of $2 million. Janko, in turn, reassigned its interest in the policy to Tuscola Furniture Group, L.L.C., a subsidiary formed to finance Mr. Stilwell's furniture business. James Stilwell died in 2003 and American General paid Tuscola more than $500,000 from the policy proceeds to satisfy his debt. After paying other claims not at issue here, American General sent Mrs. Stilwell a check for $25,000—her share of what was left of the $4 million policy; her four daughters got about $4,000 apiece. She did not object at the time these payments were made.

Instead, after filing for bankruptcy and receiving a discharge of her debts, Mrs. Stilwell sued American General for breach of the insurance policy. She argued primarily that Janko's reassignment of the policy to Tuscola was invalid because of an ambiguity in the form of the notice of reassignment Janko sent to American General. The district court disagreed and entered summary judgment for American General.

We affirm. Janko's reassignment of its interest in the life-insurance policy was valid notwithstanding the alleged

flaw in the written notice Janko provided to American General. The notice requirement in the policy is for the insurer's benefit alone; although American General initially construed the form as a notice of release and not reassignment, the insurer ultimately accepted it as a notice of the reassignment from Janko to Tuscola. In any event, the alleged ambiguity in the notice to American General did not affect the validity of the reassignment, and the policy expressly subordinates the rights of the policy's owner and beneficiaries to the rights of assignees. Accordingly, American General did not breach the insurance contract by paying Tuscola before Mrs. Stilwell and her daughters.

## I. Background

American General issued a $4 million insurance policy on the life of James Stilwell in 1998. His wife, Margaret, was the owner of the policy and a 60% beneficiary. Their four daughters were also beneficiaries and split the remaining 40% interest equally. The policy allowed the owner to change beneficiaries and to make assignments provided that "[n]o assignment of this policy will be binding on us [American General] until filed with us in writing and recorded by us."

James Stilwell was the owner and president of Amishland Country Village.[1] In 1999 Amishland and Janko

---

[1] James Stilwell, an entrepreneur who owned several businesses and some development property in central Illinois,

(continued...)

Financial Group entered into a consignment agreement to help finance Amishland's retail-furniture business. Under the contract James and Margaret were required to personally guarantee Amishland's debt and maintain life insurance of at least $2 million for the benefit of Janko and its lender. To satisfy this obligation, Mrs. Stilwell made two assignments of the American General policy proceeds to Janko, each in the amount of $2 million. American General was notified in writing and entered each assignment into the policy's records.

The next year, Janko created Tuscola Furniture Group to handle Amishland's financing needs. Janko then transferred its rights and obligations under the 1999 consignment agreement to Tuscola via an assignment and assumption agreement. On the following day, Tuscola and Amishland entered into a new consignment agreement replacing the one formed in 1999 with Janko. The only material difference in the two contracts was that the 2000 agreement reduced the amount the Stilwells were required to personally guarantee from $2 million to $1.25 million.

A few days after this transaction, the Stilwells' insurance agent sent Tuscola an assignment form so that it could notify American General of the life-insurance assign-

---

[1] (...continued)
figures prominently in another insurance-law case decided today involving the "on-premises fraud" coverage in a financial-institution bond. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.,* Nos. 06-3685 & 06-3794.

ment from Janko. A portion of the form titled "Release of Assignment" had already been completed when Larry Bianchi of Janko and Tuscola received it. Bianchi signed it, but because he was concerned about the use of the term "release," he inserted the words "[i]n favor of Tuscola Furniture Group, LLC." American General received this document and entered it into the policy's records, but as a release, not a reassignment.

Around the same time, Mrs. Stilwell executed another policy assignment in favor of Tuscola, this time in the amount of $250,000. Bianchi informed her that the assignment was inadequate because it was well below the amount specified in the 2000 consignment agreement and because it did not also name First Mid-Illinois Bank & Trust, Tuscola's lender, as required by the agreement. In January 2001 Mrs. Stilwell executed a $1 million assignment that was similarly inadequate; this time, the assignment named only First Mid-Illinois and said nothing of Tuscola. Bianchi informed Mrs. Stilwell that until these deficiencies were cured, Tuscola would not release the previous two assignments made in connection with the 1999 consignment agreement.

James Stilwell died in May 2003, triggering American General's obligations under the life-insurance policy. Tuscola and First Mid-Illinois applied jointly for payment and claimed $512,974.50 of the policy proceeds. This amount represented what Amishland owed to Tuscola at the time of James Stilwell's death, $81,020 of which Tuscola owed to First Mid-Illinois. The claim referenced the assignments Mrs. Stilwell made to Janko, Tuscola, and First Mid-Illinois totaling $3.25 million.

American General responded with letters to Janko and Tuscola. According to its records, the insurer said, Janko had released its assignments in December 2000, and American General only had current records of two assignments: one for $250,000 in favor of Tuscola and one for $1 million in favor of First Mid-Illinois. Bianchi then called Ray Swicki, director of claims for American General, and explained that the "release" form he had signed was meant to notify American General that Janko had transferred its rights under the insurance policy to Tuscola; he noted the "in favor of Tuscola" notation he had made on the form. Tuscola followed up with correspondence to American General detailing each of the assignments made by Mrs. Stilwell and the reassignment from Janko to Tuscola in connection with the 2000 transactions. The letter also explained that the "Release of Assignment" form was notice of a transfer or reassignment, as Bianchi's handwritten notation "in favor of Tuscola Furniture Group" had attempted to make clear. American General accepted this explanation and paid the claim in June 2003.

Meanwhile, in May 2003 Mrs. Stilwell received her 60% share on a separate $1 million life-insurance policy her husband had with American General, but she did not simultaneously claim any benefits under the $4 million policy. After paying the Tuscola/First Mid-Illinois claim and the claims of other creditors on the $4 million policy (the insurer's payment of other creditors is not at issue here), American General sent Mrs. Stilwell a check for 60% of the remainder, totaling just over $25,000. The Stilwells' daughters also received $4,225.83 each.

Mrs. Stilwell filed for bankruptcy in November 2003 and received a discharge of her debts in April 2004. Neither Janko nor Tuscola asserted any claims in the bankruptcy because Amishland's debt was satisfied by the proceeds of James's life-insurance policy. After emerging from bankruptcy, Mrs. Stilwell and her daughters brought this suit against American General, arguing that it had breached the life-insurance contract by paying Tuscola more than it was entitled to under the assignments made pursuant to the 2000 consignment agreement. According to the Stilwells, Tuscola held only one valid assignment worth $250,000. The Stilwells asserted that the two previous assignments totaling $2 million were no longer valid because Janko released them when it submitted the "Release of Assignment" form to American General and no valid notice of the "reassignment" to Tuscola had been filed with American General.

American General filed a third-party complaint against Janko, Tuscola, and First Mid-Illinois seeking indemnification, should it be found liable. First Mid-Illinois then filed a cross-claim for contribution from Janko and Tuscola if it was liable under American General's third-party complaint. All parties moved for summary judgment. The district court denied the Stilwells' motion, granted summary judgment in favor of American General, and declared the remaining motions moot.

The Stilwells appealed. American General filed a contingent cross-appeal based on its third-party complaint. American General and third-party defendants Janko, Tuscola, and First Mid-Illinois then stipulated to reinstate all third-party proceedings should the judgment be

reversed on appeal. Accordingly, we need address only the dispute between the Stilwells and American General.

## II. Analysis

We review de novo the district court's grant of summary judgment. *Matthews v. Milwaukee Area Local Postal Workers Union, AFL-CIO*, 495 F.3d 438, 441 (7th Cir. 2007). On cross-motions for summary judgment, the party whose motion was denied may appeal as that judgment "has merged into the final judgment [granting the opposing motion] and is therefore appealable as well." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The Stilwells argue that American General breached the insurance contract by overpaying Tuscola. Tuscola, they maintain, held only one valid assignment—for $250,000—because Janko's attempt to transfer Mrs. Stilwell's first two assignments was invalid. Their argument is based largely on the fact that the notice to American General was styled as a "release" and not a "reassignment." They also argue that Tuscola's joint claim with First Mid-Illinois was an acknowledgment that it knew it was undersecured; James Stilwell's debt to Tuscola far exceeded the $250,000 assignment from Mrs. Stilwell, so it needed to bring itself within the larger assignment she had made to its lender.

The parties agree that Illinois law controls. An assignment is the "manifestation of the assignor's intention to transfer" a right so that the assignee acquires the right to performance by the obligor. RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981); *see also Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1069 (Ill. App. Ct. 1995) ("It is necessary that the assignor manifests an intent to transfer his rights under the contract to the assignee."). General contract law governs the making of assignments. The existence of an assignment is "determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances." *Nw. Diversified, Inc. v. Desai*, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004) (citation omitted); *see also Chemetall GMBH v. Zr Energy, Inc.*, 320 F.3d 714, 720-21 (7th Cir. 2003).

We take the Stilwells' arguments in reverse order; their last argument is an indirect one and can be dispatched quickly. The Stilwells suggest that the only reason Tuscola filed a joint claim with First Mid-Illinois was because it feared that its only valid assignment was the one Mrs. Stilwell made in 2000 for $250,000, well below what Amishland owed. There is, they insist, no other valid explanation for the joint claim. This argument ignores the language of the 2000 consignment agreement between Amishland and Tuscola. Amishland agreed to maintain a life-insurance policy on James's life "with TFG [Tuscola] and BANK [First Mid-Illinois] named as beneficiary." Any proceeds would "be used first to pay BANK for the amount TFG owes BANK in order to

release its lien on the Amish furniture." After James Stilwell died, Tuscola and First Mid-Illinois sought $512,974.50, which included the amount Tuscola owed to First Mid-Illinois. Far from an acknowledgment by Tuscola that it only had one valid assignment worth $250,000, the joint claim made perfect sense in light of the requirements of the 2000 consignment agreement.

The parties also engage in an immaterial semantic debate over whether this was a "joint claim" or two claims filed jointly; we need not weigh in. Whether the claim by Tuscola and First Mid-Illinois was a single joint claim or two claims filed jointly has no bearing on the validity of the reassignments made by Janko to Tuscola.

So much for the indirect argument. The Stilwells' direct attack on the validity of the reassignment focuses on the notice sent by Janko to American General. They claim that the reassignment from Janko to Tuscola was invalid because Janko transferred the underlying debt to Tuscola a full two weeks before sending the notice to American General. This argument appears to rest on the faulty assumption that the notice sent by Bianchi to American General *was* the reassignment. But that form did not alter the legal relations between Janko and Tuscola; it was, rather, an attempt to notify American General that Janko had reassigned its rights to Tuscola under the assignment and assumption agreement, as Bianchi noted by indicating that the release was "in favor of Tuscola." The assignment and assumption agreement was a valid manifestation of Janko's intent to transfer its rights under the life-insurance policy to Tuscola in return for Tuscola assuming Janko's obliga-

tion to finance Amishland's retail-furniture business. Bianchi's attempt to notify American General of the transaction had no effect on the validity of the underlying assignment because the assignment was complete upon finalization of the agreement. *See Desai*, 818 N.E.2d at 761 ("An assignment, 'oral or written, occurs when there is a transfer of some identifiable interest from the assignor to the assignee.'" (quoting *Klehm v. Grecian Chalet, Ltd.*, 518 N.E.2d 187, 191 (Ill. App. Ct. 1987))).

Finally, the Stilwells argue that the "Release or Assignment" form signed by Bianchi was an invalid notice of reassignment and therefore American General should not have paid Tuscola's claim (that is, should not have paid any amount in excess of the $250,000 assignment Mrs. Stilwell made directly to Tuscola). The Stilwells invoke the provision in the insurance policy stating that "[n]o assignment of this policy will be binding on us [American General] until filed with us in writing and recorded by us." Based on the "release" language in the notice (and notwithstanding Bianchi's handwritten notation "in favor of Tuscola" on the form), the Stilwells argue that because American General initially recognized the notice as a *release* of the first two assignments and not a *reassignment* of them, the notice was insufficient. Bianchi's belated explanation, they claim, is not a cure.

This argument appears to assume that the sufficiency of the *notice to the insurer* determines the validity of the assignment; this is not so. Janko's ambiguous attempt at notification had no effect on the validity of its assignment of its interest in the insurance policy to Tuscola. Only the insurer may object to any noncompliance with the notice

provision in the insurance policy. "Absent a statutory requirement to the contrary, notice to the debtor is not essential to the validity of an assignment, unless the debtor acted to his prejudice because of lack of notice or before receiving notice of the assignment." *Grunloh v. Effingham Equity, Inc.*, 528 N.E.2d 1031, 1039 (Ill. App. Ct. 1988); 6A C.J.S. *Assignments* § 80 (2008). The policy's notice provision "is for the benefit of the insurer." *Gray v. Penn Mut. Life Ins. Co. of Phila.*, 126 N.E.2d 409, 414 (Ill. App. Ct. 1955); 3 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 36:41 (3d ed. 1995 & Supp. 2008) ("[A] require-ment of notice is designed for the protection of the insurer and it alone may raise the objection that notice was not given to it as required by the policy."); 22 ILLINOIS LAW AND PRACTICE, INSURANCE § 197 (West 1956 & Supp. 2008) ("Provisions of a life insurance policy requiring notice of an assignment to be given to the insurer are for the benefit of it alone, and no one else may object because of failure to comply with such provisions."). American General satisfied itself that Bianchi's explanation of the notice was accurate and verified the existence of the reassignment from Janko to Tuscola. Under these circum-stances, American General was *required* to pay Tuscola before the Stilwells; the policy specifies that the rights of the policy owner and beneficiaries are subject to the rights of any assignee.

Accordingly, summary judgment for American General was properly entered. The judgment of the district court is AFFIRMED.