# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP183 |
| COMPLETE TITLE: | Randy L. Betz,<br>        Plaintiff-Appellant,<br>    v.<br>Diamond Jim's Auto Sales,<br>        Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 344 Wis. 2d 681, 825 N.W.2d 508
(Ct. App. 2012 – Published)
PDC No.: 2012 WI App 131

| | |
|---|---|
| OPINION FILED: | July 15, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Maxine A. White |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | ROGGENSACK, J., did not participate. |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs by *Lawrence J. Drabot*, *Sara C. Mills*, and *Crivello Carlson, S.C.,* Milwaukee, and oral argument by *Lawrence J. Drabot*.

For the plaintiff-appellant, there was a brief by *Timothy J. Aiken*, *Vincent P. Megna*, *Susan M. Grzeskowiak*, and *Aiken & Scoptur, S.C.*, Milwaukee, and oral argument by *Susan Grzeskowiak* and *Timothy J. Aiken*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP183
(L.C. No. 2010CV2883)

STATE OF WISCONSIN        :       IN SUPREME COURT

**Randy L. Betz,**

      **Plaintiff-Appellant,**

      **v.**

**Diamond Jim's Auto Sales,**

      **Defendant-Respondent-Petitioner.**

**FILED**

**JUL 15, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a decision of the court of appeals, Betz v. Diamond Jim's Auto Sales, 2012 WI App 131, 344 Wis. 2d 681, 825 N.W.2d 508, reversing an order of the Milwaukee County Circuit Court[1] denying a motion by the attorneys representing Randy L. Betz ("Betz") to recover statutory attorney's fees from Diamond Jim's Auto Sales ("Diamond Jim's").

¶2 In this case we are asked to determine the circumstances under which plaintiff's counsel may recover

---

[1] The Honorable Maxine A. White presided.

statutory attorney's fees directly from a defendant when, without counsel's knowledge or approval, the plaintiff and defendant enter into a settlement agreement that does not address attorney's fees.

¶3 Betz hired Milwaukee attorney Vincent Megna ("Megna") to represent him in his dispute with Diamond Jim's.[2] Megna filed a lawsuit on Betz's behalf under two fee-shifting statutes. During the litigation, Betz and Diamond Jim's met and settled the case without their attorneys' knowledge or approval. The settlement agreement did not reference payment of Megna's statutory attorney's fees. Subsequently, Megna filed a motion with the circuit court seeking to recover his statutory fees from Diamond Jim's. The circuit court denied Megna's motion. The court of appeals reversed, citing public policy concerns with enforcing settlements made "behind the backs" of the attorneys in cases brought under fee-shifting statutes.

¶4 Diamond Jim's argues that the right to recover statutory attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees to Megna. As a result, Diamond Jim's argues that Megna cannot recover fees directly from Diamond Jim's. Further, Diamond Jim's argues that public policy encourages parties to settle disputes and

---

[2] Several attorneys with the law firm of Aiken & Scoptur, S.C., including Megna, worked on Betz's case. All these attorneys seek to recover statutory attorney's fees from Diamond Jim's. For the sake of simplicity, this opinion will refer only to Megna.

requiring counsel's consent to such settlements in fee-shifting cases presents a conflict of interest.

¶5 Megna argues that Betz did assign his statutory right to recover attorney's fees, and that the public policy underlying fee-shifting statutes would be undermined if clients were allowed to settle fee-shifting cases without ensuring payment of statutory attorney's fees. Megna further asserts that attorney involvement and consent to settlement agreements in fee-shifting cases will not serve as a barrier to settlement.

¶6 We conclude that the statutory right to recover attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees to Megna in their fee agreement. Because we conclude that Betz did not assign his right to recover statutory attorney's fees to Megna, we must conclude that Diamond Jim's could not have had notice of the assignment. As a result, we conclude that Megna may not seek statutory attorney's fees directly from Diamond Jim's, and that the settlement agreement entered into between Diamond Jim's and Betz is clear, unambiguous, and enforceable. We therefore reverse the court of appeals.

## I. FACTUAL BACKGROUND

¶7 On October 19, 2009, Betz purchased a 1999 Cadillac Escalade from Diamond Jim's. Betz paid $8,705.98 for the vehicle, including sales tax, title, and license fee. Over the following months, Betz experienced problems with the vehicle, which Diamond Jim's was unable to address to Betz's satisfaction.

¶8 On February 12, 2010, Betz hired Megna to represent him in his dispute with Diamond Jim's. The terms of the fee agreement[3] between Betz and Megna provided, in relevant part:

I understand that I do not have to pay any attorney fees unless my attorneys recover money for me in this case.

FEE SHIFTING

I understand that Sec. 100.18, Wis. Stats., _____ is a fee[-]shifting statute. This means if I win at trial or settle my case during litigation, the defendant is usually responsible for paying my attorney fees based on my attorney's hourly rate. I understand that the Law Offices of Vince Megna is accepting my case with the agreement that it will look to the defendant for payment of attorney fees pursuant to the fee[-]shifting provision once a lawsuit has been filed.

. . . .

SETTLEMENT PRIOR TO LAWSUIT

If a settlement is reached prior to a lawsuit being filed in my case, I understand that the defendant may not be responsible for payment of my attorney fees. In this event, the Law Offices of Vince Megna agrees to charge a flat rate attorney fee in the amount of _____.

COSTS AND EXPENSES

I understand that the Law Offices of Vince Megna will need to pay costs and expenses. In the event my case is lost through no fault of my own, I understand that the Law Offices [of] Vince Megna will not bring a claim against me for these costs and expenses.

---

[3] The fee agreement referenced "The Law Offices of Vince Megna" rather than Megna's firm, Aiken & Scoptur. The parties have not addressed the impact, if any, of this distinction, and we therefore ignore it for purposes of this opinion.

I understand that if I do not accept a settlement that my attorneys deem reasonable and my case continues without settlement, I will be required to immediately reimburse the Law Offices of Vince Megna for all costs and expenses paid up until that point and then be responsible to pay all further costs and expenses as same become due.

TERMINATION

I understand that my attorney has the right to "terminate" me as a client. The Law Offices of Vince Megna will be entitled to fees for the work done at its hourly rate and its costs, not to exceed 33 1/3% of my gross recovery.

I understand that I have a right to terminate my attorneys. However, if I do so, I will be responsible for the Law Offices of Vince Megna fees and costs due on the date of termination, not to exceed 33 1/3% of my gross recovery.

(bolding omitted) (all blanks in original).

¶9  On March 1, 2010, Betz sued Diamond Jim's in Milwaukee County Circuit Court.  Betz asserted claims for false advertising, contrary to Wis. Stat. § 100.18 (2009-10),[4] intentional fraudulent misrepresentation and violations of automobile dealership regulations, contrary to Wis. Stat. § 218.0116.  In addition to compensatory and punitive damages, Betz also claimed "actual attorney's fees" from Diamond Jim's under fee-shifting statutes §§ 100.18(11)(b)2.[5] and 218.0163(2).[6]

---

[4] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

[5] Wisconsin Stat. § 100.18(11)(b)2. provides, in relevant part:

   Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall

¶10 On May 17, 2010, Megna, on behalf of Betz, made a settlement offer pursuant to Wis. Stat. § 807.01. The settlement offer sought $10,750 in damages and $5,900 in attorney's fees. The offer stated that the check for attorney's fees should be made payable to Megna's firm. Diamond Jim's rejected this offer through counsel.

¶11 On September 28, 2010, counsel for Diamond Jim's made a counter-offer to settle the case by repurchasing the vehicle and paying $2,000 towards Betz's attorney's fees. Megna, on behalf of Betz, rejected this offer.

¶12 On April 4, 2011, Betz and Thomas Letizia ("Letizia"), the general manager of Diamond Jim's, met without counsel and settled the case. The settlement agreement provided, in relevant part:

> The purpose of this Agreement is the Amicable Resolution of the Action without the need for further litigation, the relinquishment by each of the parties of any claim or cause of action arising from or relating to the issues in the Action, and the mutual release of all liability.
>
> Therefore, in consideration of the following mutual promises and releases made by the Parties as well as other good and valuable consideration, the Parties to

---

recover such pecuniary loss, together with costs, including reasonable attorney fees, . . . .

[6] Wisconsin Stat. § 218.0163(2) provides, in relevant part:

> Any retail buyer, lessee or prospective lessee suffering pecuniary loss because of a violation by a licensee . . . may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees.

this Agreement agree that this Agreement is entered into as a compromise of disputed claims and does not constitute of liability [sic] or obligation whatsoever on behalf of any of the parties pursuant to the respective claims.

The parties agree to solve the action [sic] pursuant to the following specified terms:

A) James Letizia and Diamond Jim's Auto Sales agree to Pay to Randy L. Betz the sum of [$15,000] paid in form of check number 7114;

B) Randy L. Betz hereby agrees that [his suit against Diamond Jim's] [s]hall be dismissed.

¶13 On April 5, 2011, counsel for Diamond Jim's learned of the settlement and drafted a letter advising Megna that the case was resolved. The letter referenced the parties' "confidential settlement" agreement and included a draft stipulation to dismiss the case.

## II. PROCEDURAL POSTURE

¶14 On April 21, 2011, Megna filed three motions with the circuit court. First, Megna asked the circuit court to compel Diamond Jim's to pay statutory attorney's fees pursuant to Wis. Stat. § 100.18(11).[7] Megna argued that the right to recover attorney's fees under the statute belonged to the lawyer and not the client, and that he and his firm were owed $16,808.50 at the time of the settlement. Second, Megna requested leave to amend the complaint and intervene as a plaintiff, arguing that he had a cause of action against Diamond Jim's for intentional

---

[7] While Betz's suit included claims under two different fee-shifting statutes, Wis. Stat. §§ 100.18 and 218.0163, Megna's motion referenced only § 100.18.

7

interference with a contractual relationship. Third, Megna sought a court order compelling disclosure of the confidential settlement between Betz and Diamond Jim's.

¶15 Diamond Jim's opposed Megna's motions. Diamond Jim's argued that the statutory right to recover attorney's fees belonged to Betz, and that the settlement agreement was a clear and unambiguous contract between the parties and should be enforced. Diamond Jim's asserted that the parties were entitled to settle the case without counsel if they chose, and that while Wis. Stat. § 100.18(11) allows for recovery of attorney's fees, it does not mandate such a recovery in the event of a settlement. Diamond Jim's also argued that the settlement agreement should remain confidential unless the parties agreed to disclose the terms.

¶16 On July 26, 2011, the court granted Megna's motion to require disclosure of the confidential settlement agreement. The court held all other motions in abeyance for 30 days to allow the parties the opportunity to negotiate a settlement of the attorney's fee issue. On August 31, 2011, the parties disclosed to the court that they had failed to resolve the dispute. The court then set a briefing schedule for the pending motions.

¶17 On September 30, 2011, Diamond Jim's filed a motion for reformation of the contract, or alternatively, for rescission. The filing included an affidavit from Letizia wherein he stated that when he signed the settlement agreement, he believed it resolved the issue of statutory attorney's fees.

8

Diamond Jim's argued that if the settlement agreement did not, in fact, resolve the fee issue, the agreement did not represent a meeting of the minds and should be reformed or rescinded.

¶18 On December 8, 2011, the circuit court held a motion hearing. The court determined that the statutory right to recover attorney's fees belonged to Betz and not to his attorneys. The court further concluded that the settlement agreement was a clear, unambiguous, and binding contract between Betz and Diamond Jim's. As a result, the court denied Megna's motions and dismissed the case.[8]

¶19 On January 23, 2012, Megna appealed.[9]

¶20 On appeal, Megna argued that the fee-shifting statute did not permit Betz to settle his claims without Megna's knowledge or consent. Megna asserted that the right to collect fees under the statute belonged to the attorney and not the client, and that Diamond Jim's had a duty to refrain from settling without Megna's knowledge or consent. Megna further argued that the public policy underlying fee-shifting statutes would be frustrated if clients were permitted to settle fee-shifting cases without addressing statutory attorney's fees. Finally, Megna argued that it would be inequitable to allow

---

[8] Although the court stated in its December 8 order denying Megna's motion that the order was final and appealable, it did not enter an order dismissing the suit until January 9, 2012.

[9] Megna's notice of appeal indicated that he was appealing from the circuit court's December 8, 2011 order denying his motions, rather than the January 9, 2012 order dismissing the suit.

Diamond Jim's to avoid paying statutory attorney's fees in this case.

¶21 Diamond Jim's argued that Betz had a right to settle his claims and that right was not conditioned on his attorney's knowledge or consent. Diamond Jim's asserted that the trial court properly relied on contract principles in resolving the issue, and that statutory attorney's fees cannot be awarded under equitable principles. Diamond Jim's further argued that Megna should be seeking attorney's fees from his client, Betz, and not Diamond Jim's.

¶22 On October 16, 2012, the court of appeals reversed the circuit court. Betz, 344 Wis. 2d 681, ¶1. The court of appeals concluded that the settlement agreement, despite being clear and unambiguous, was void because it was contrary to the public policy behind fee-shifting statutes. Id., ¶13. The court of appeals therefore ordered Betz to return the settlement payment and remanded the case to the circuit court for continued litigation. Id., ¶14.

¶23 Diamond Jim's petitioned this court for review, which we granted on May 10, 2013.

                    III. STANDARD OF REVIEW

¶24 "The interpretation of an unambiguous contract presents a question of law for this court's independent review." Town Bank v. City Real Estate Dev., LLC, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476 (citing Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶15, 326 Wis. 2d 586, 786 N.W.2d 759).

10

¶25 "[T]he application of public policy considerations to a contract" also presents a question of law that this court reviews de novo. Northern States Power Co. v. Nat'l Gas Co., 2000 WI App 30, ¶7, 232 Wis. 2d 541, 606 N.W.2d 613 (citing Bowen v. Lumbermens Mut. Cas. Co., 183 Wis. 2d 627, 654, 517 N.W.2d 432 (1994)).

IV. ANALYSIS

¶26 "[A]n important purpose of fee-shifting statutes is to encourage injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so." Kolupar v. Wilde Pontiac Cadillac, Inc., 2007 WI 98, ¶55, 303 Wis. 2d 258, 735 N.W.2d 93 (citing Shands v. Castrovinci, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983)). Fee-shifting "encourage[s] attorneys to take cases where the pecuniary loss is small in relation to the cost of litigation." Cook v. Pub. Storage, Inc., 2008 WI App 155, ¶85, 314 Wis. 2d 426, 761 N.W.2d 645. "For the retail buyer with a claim under [a fee-shifting statute], the cost of the litigation may be significant, and even . . . exceed the total recovery under the statute." Kolupar, 303 Wis. 2d 258, ¶37.

¶27 "The cumulative effect of minor transgressions is considerable, yet they would not be deterred if fees were unavailable." Fletcher v. City of Fort Wayne, Ind., 162 F.3d 975, 976 (7th Cir. 1998). "If the cost of litigation reduces or even eliminates recovery, retail buyers will be less likely to enforce their rights under the statute." Kolupar, 303

11

Wis. 2d 258, ¶37. Fee-shifting thus prevents "defendants from inflicting with impunity small losses on the people whom they wrong." Orth v. Wisconsin State Employees Union Council 24, 546 F.3d 868, 875 (7th Cir. 2008).

¶28 Fee-shifting statutes, and the attorneys who represent clients in such cases, are thus vital to ensuring that the rights of consumers are vindicated in court. The importance of this public policy is not a matter of debate.

¶29 Additionally, attorneys who represent clients in fee-shifting cases already take a significant risk that they will not be paid, because they may not "win" a case. Ordinarily, fees are awarded only to a "prevailing party." See, e.g., Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987). While we recognize the important right of a client to settle, if a client has an unfettered right to settle without counsel's involvement when a fee-shifting statute is implicated, otherwise qualified attorneys will be discouraged from practicing in this vitally important area of law.[10]

¶30 Nonetheless, the legislature has determined that an award of attorney's fees under Wis. Stat. § 100.18(11) belongs to the "person suffering pecuniary loss." Gorton v. Hostak, Henzl & Bichler, S.C., 217 Wis. 2d 493, 503, 577 N.W.2d 617 (1998). Thus, statutory attorney's fees belong to the client and not the attorney. Given this legislative determination and

---

[10] For example, the record reflects that Megna is one of only a handful of attorneys in Wisconsin who takes automobile consumer rights cases.

12

the public policy considerations implicated in these matters, both the purpose of fee-shifting statutes and the public interest they promote are undermined when a client settles without counsel and that settlement does not provide for recovery of statutory attorney's fees.

¶31 In Zeisler v. Neese, the Seventh Circuit was presented with a similar conflict involving a settlement that failed to address the statutory right to recover attorney's fees. 24 F.3d 1000 (7th Cir. 1994). The Seventh Circuit's analysis in Zeisler informs our conclusions in the case at issue and aids us in balancing the competing public policy considerations.

¶32 In Zeisler the plaintiff, Carol Zeisler ("Zeisler"), purchased a used car from Neese Motors ("Neese") using dealer financing. Id. at 1001. Zeisler became unhappy with the vehicle and contacted Attorney Barry Barash ("Barash") to represent her in her dispute with Neese. Id. Barash agreed to accept the case on a contingent fee basis, but neglected to execute a fee agreement with Zeisler. Id. Through Barash, Zeisler filed suit against Neese under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq, a fee-shifting statute.[11] Id.

¶33 While the suit was pending, Zeisler defaulted on her financing agreement with Neese, and Neese repossessed the car. Id. Neese offered to provide Zeisler with a different, less expensive vehicle in exchange for her agreement to dismiss the

---

[11] The Truth In Lending Act provides that a creditor violating the statute is liable for "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3).

13

lawsuit. Id. Without consulting Barash, Zeisler agreed to the settlement. Id. The settlement made no reference to attorney's fees. Id. The trial court dismissed the suit over Barash's objections. Id.

¶34 On appeal the Seventh Circuit affirmed the trial court. Id. The court concluded that the statutory right to recover attorney's fees belonged to the client and not the attorney, and that the interests of the client were served by encouraging settlement. Id. The court, acknowledging the policy concerns involved, then addressed how attorneys could protect their legitimate interest in receiving payment:

> The lawyer can protect himself, moreover, though not perfectly, by entering into a written contract with his client in which the client assigns his statutory right to attorney's fees to the lawyer. Then the lawyer can enforce the right without the participation of his client, as in Samuels v. American Motors Sales Corp., 969 F.2d 573, 576-77 (7th Cir. 1992). If the client makes a settlement with the defendant, waiving attorney's fees, and the defendant has no notice of the assignment——no notice, that is, that the entitlement to attorney's fees is not the plaintiff's to waive——the lawyer can go against his client for breach of contract. If the defendant does have notice of the assignment, the lawyer can go directly against the defendant. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 194 (1924); Production Credit Ass'n v. Alamo Ranch Co., 989 F.2d 413, 417 (10th Cir. 1993).

Id. at 1002.

¶35 Thus, practically speaking, under Zeisler so long as the written contract between the lawyer and the client so provides, counsel can seek payment of attorney's fees from the client. Moreover, when the written contract between the lawyer

14

and the client provides for a valid assignment of the right to recover statutory attorney's fees, counsel may pursue such fees from the defendant so long as the defendant had notice of the assignment. In other words, if the parties enter into a private settlement without the involvement of counsel, and the settlement fails to provide for statutory attorney's fees,[12] the defendant may be found responsible for plaintiff's attorney's fees only when the client assigned his or her right to recover statutory attorney's fees to the attorney and the defendant had notice of the assignment.

¶36 We adopt the standard, as posed in Zeisler, as an appropriate framework to decide whether Megna can recover his statutory attorney's fees directly from Diamond Jim's under these circumstances.

¶37 At the outset, we note that it is undisputed that neither Megna nor counsel for Diamond Jim's was involved in the April 4, 2011 settlement agreement with Betz. It is likewise undisputed that the settlement agreement between Betz and Diamond Jim's failed to provide for payment of Megna's attorney's fees. Thus, under the facts presented, the crux of the matter before the court, as it was in Zeisler, is (1)

---

[12] Although the Zeisler court used the term "waiver," we expressly avoid that term in our statement of the standard. This is because the term "waiver" under Wisconsin law is the "intentional relinquishment of a known right." See, e.g., Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶37, 325 Wis. 2d 135, 785 N.W.2d 302. The attorney's right to be paid, however, was not explicitly addressed in the settlement agreement in Zeisler, or in the case at issue.

whether Betz assigned his statutory right to recover attorney's fees to Megna under the fee agreement, and if so, (2) whether Diamond Jim's had notice of the assignment at the time of the settlement.

¶38 Given the fact that Betz and Diamond Jim's settled this case without counsel and without providing for Megna's attorney's fees, we first address whether the fee agreement provided for a valid assignment of the right to recover statutory attorney's fees from Betz to Megna. In order to determine whether Betz assigned his right to recover statutory attorney's fees to Megna under the fee agreement, we look to the fee agreement itself. A fee agreement is a contract. "When construing contracts that were freely entered into, our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" Town Bank, 330 Wis. 2d 340, ¶33 (quoting State ex rel. Journal/Sentinel, Inc. v. Pleva, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990)).

¶39 "In ascertaining the intent of the parties, contract terms should be given their plain or ordinary meaning." Huml v. Vlazny, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807. "'If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence.'" Town Bank, 330 Wis. 2d 340, ¶33 (quoting Huml, 293 Wis. 2d 169, ¶52). "Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence

16

to resolve the parties' intent." Id. (citing Capital Invs., Inc. v. Whitehall Packing Co., Inc., 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979)).

¶40 Megna argues that Betz assigned his statutory right to recover attorney's fees to Megna under the fee agreement. Alternatively, Megna argues that Betz's right to recover attorney's fees should be equitably subrogated to Megna. In either case, Megna argues that Betz lacked the right to relinquish statutory attorney's fees against Diamond Jim's. Under the logic of Zeisler, Megna's argument is unpersuasive.

¶41 "An assignment is the 'manifestation of the assignor's intention to transfer' a right so that the assignee acquires the right to performance by the obligor." Stilwell v. Am. Gen. Life Ins. Co., 555 F.3d 572, 577 (7th Cir. 2009) (quoting Restatement (Second) of Contracts § 317 (1981)). "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee." Restatement (Second) of Contracts § 324 (1981). No such manifestation exists in the fee agreement at issue.

¶42 The terms of the fee agreement indicate that Betz understood that "the defendant is usually responsible for paying" attorney's fees in suits under Wis. Stat. § 100.18. The agreement further provided that Betz's attorneys would "look to the defendant for payment of attorney fees pursuant to the fee[-]shifting provision once a lawsuit has been filed." These

17

qualified statements, however, cannot be fairly characterized as a written assignment of Betz's statutory right to recover fees.

¶43 The fee agreement further provides for a number of circumstances where Betz might have to pay for Megna's fees or costs himself.  For example, if the case had settled prior to the filing of the lawsuit, Betz would have had to pay a flat rate for Megna's fees.  Similarly, if Betz had declined to settle the case on terms his attorneys "deem[ed] reasonable," he would have had to immediately pay all of Megna's costs up to that point and continue to pay further costs as they became due. Finally, the agreement provided that if either Betz or his attorneys terminated the attorney-client relationship, Betz would be responsible for paying both Megna's fees and costs. These provisions provide evidence that Betz did not assign his right to statutory attorney's fees to Megna in the fee agreement.  As a result, traditional principles of contract law militate against finding that Betz assigned his right to statutory attorney's fees to Megna.

¶44 Similarly, Megna's argument that Betz equitably subrogated his right to recover statutory attorney's fees to counsel is not compelling.

¶45 "'Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another.'"  Ocwen Loan Servicing, LLC v. Williams, 2007 WI App 229, ¶7, 305 Wis. 2d 772, 741 N.W.2d 474 (quoting Rock River Lumber Corp. v.

18

Universal Mortg. Corp. of Wis., 82 Wis. 2d 235, 240-41, 262 N.W.2d 114 (1978)). Courts are permitted "to grant equitable remedies to private litigants in situations in which there is no explicit statutory authority or in which the available legal remedy is inadequate to do complete justice." Breier v. E.C., 130 Wis. 2d 376, 388, 387 N.W.2d 72, 77 (1986); see also GMAC Mortg. Corp. of Pa. v. Gisvold, 215 Wis. 2d 459, 479-80, 572 N.W.2d 466 (1998).

¶46 In the case at issue, we are presented with specific statutory authority which grants the right to recover attorney's fees to the plaintiff. Wis. Stat. § 100.18(11)(b)2. If we were to conclude that the client's right to recover statutory attorney's fees is equitably subrogated to the attorney once counsel is retained, despite a fee agreement that does not clearly assign that right, we would undermine the legislature's explicit directive to the contrary. The legislature has concluded that it is the client's right to recover statutory attorney's fees. The equitable principles espoused by Megna do not trump the language of the agreement or the legislative directive.

¶47 Additionally, Megna is not necessarily without a remedy if he is unable to recover directly from Diamond Jim's. Megna could seek payment from Betz under their fee agreement. For these reasons, equitable relief in the form of subrogation is not appropriate in this case.

¶48 Further, to the extent this fee agreement could be deemed unclear regarding Megna's right to recover statutory

attorney's fees from Betz or Diamond Jim's, "the burden is on the attorney who possesses legal knowledge and who drafts the agreement to state clearly the terms of the fee agreement and to address specifically the allocation of court-awarded attorney fees." Gorton, 217 Wis. 2d at 508; see also Ziolkowski Patent Solutions Grp., S.C. v. Great Lakes Dart Mfg., Inc., 2011 WI App 11, ¶13, 331 Wis. 2d 230, 794 N.W.2d 253 (holding that attorneys have the burden to clearly draft their legal fee agreements).

¶49 Given that written fee agreements are required, see SCR 20:1.5(c), attorneys are cautioned to clearly draft a fee agreement so that it unambiguously assigns the client's statutory right to recover attorney's fees from the defendant under these circumstances. As discussed, vital public policy interests are at stake.

¶50 A clear fee agreement not only protects the attorney, but also protects the client and avoids conflict. A more clearly drafted fee agreement in the case at issue would have resolved the problem without the necessity of additional litigation.

¶51 Because Megna's fee agreement failed to clearly secure an assignment from Betz in the case at issue, his remedy against Diamond Jim's is foreclosed.

¶52 Finally, because we conclude that the fee agreement does not provide for a valid assignment of Betz's right to recover statutory attorney's fees to Megna, we conclude that the second Zeisler criterion cannot be met. Because there was no assignment between Betz and Megna, Diamond Jim's could not know

20

of the assignment. As a result, the Zeisler test is not met in this regard either.

## V. CONCLUSION

¶53 We conclude that the statutory right to recover attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees to Megna in their fee agreement. Because we conclude that Betz did not assign his right to recover statutory attorney's fees to Megna, we must conclude that Diamond Jim's could not have had notice of the assignment. As a result, we conclude that Megna may not seek statutory attorney's fees directly from Diamond Jim's, and that the settlement agreement entered into between Diamond Jim's and Betz is clear, unambiguous, and enforceable. We therefore reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶54 PATIENCE DRAKE ROGGENSACK, J., did not participate.

¶55 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* The issue before the court is whether the written fee agreement between Randy Betz, the client, and Vince Megna, the attorney, transferred the client's right to statutory attorney fees to the attorney. The majority opinion, ¶43, purports to apply "traditional principles of contract law" to decide the issue. It does not.

¶56 The majority opinion interprets the text of the fee agreement in a scant three paragraphs, ¶¶41, 42, and 43, without any analysis, proof, authority, or resort to contract principles.

¶57 At ¶41, without any analysis, proof, authority, or use of principles of contract interpretation, the majority opinion recites the rule that an assignment depends on the assignor's intention and then pronounces in a single sentence that "no such manifestation [of the assignor's intention to transfer a right] exists in the fee agreement at issue."[1] Nothing more to analyze here.

---

[1] The full text of the majority opinion, ¶41, reads as follows:

> "An assignment is the 'manifestation of the assignor's intention to transfer' a right so that the assignee acquires the right to performance by the obligor." Stilwell v. Am. Gen. Life Ins. Co., 555 F.3d 572, 577 (7th Cir. 2009) (quoting Restatement (Second) of Contracts § 317 (1981)). "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee." Restatement (Second) of Contracts § 324 (1981). No such manifestation exists in the fee agreement at issue.

1

¶58 At ¶42, without any analysis, proof, authority, or use of principles of contract interpretation, the majority opinion pronounces that because the **"FEE SHIFTING"** provision has "qualified statements" it "cannot be fairly characterized as a written assignment of Betz's statutory right to recover fees."

¶59 At ¶43, without any analysis, proof, authority, or use of principles of contract interpretation, the majority opinion pronounces that various parts of the fee agreement that "provide[] for a number of circumstances in which Betz might have to pay for Megna's fees or costs himself" "provide evidence that Betz did not assign his right to statutory attorney's fees to Megna in the fee agreement."

¶60 Rather than apply rules of contract interpretation, some of which the majority opinion dutifully recites, the majority opinion simply decrees, ipse dixit, that the language of the fee agreement does not mean what it says. This resolution cannot be correct.[2] The fee agreement unambiguously assigned Betz's right to attorney's fees to Megna.

¶61 This court's pronouncements about assignments extend beyond the instant case. Assignments are frequently the subject of litigation in this court. This court has considered assignments in other cases and contexts, each with its own

---

[2] At the circuit court, the attorney moved to intervene to make a claim against the defendant for tortious interference with the fee agreement. Neither the parties nor I address this issue or any potential claim the attorney may have against the defendant.

particularities due to the circumstances of the case.[3] Although each of these cases involves a slightly different fact scenario, a central question is the same——did the parties execute an effective assignment?

I

¶62 I apply the following principles of contract law to the instant case.

¶63 The Restatement (Second) of Contracts, relied upon by the majority opinion, ¶41, defines an assignment as follows: "An assignment is the 'manifestation of the assignor's intention to transfer' a right so that the assignee acquires the right to performance by the obligor."[4]

¶64 The Restatement does not require any particular formalities to be observed to make an effective assignment.[5] "No

---

[3] See, e.g., Anthony Gagliano & Co. v. Openfirst, 2014 WI 65, ___ Wis. 2d ___, ___N.W.2d ___ (disputing whether a transfer of property rights constituted an assignment or a sublease); Dow Family, LLC v. PHH Mortgage Corp., 2014 WI 56, ___ Wis. 2d ___, ___N.W.2d ___ (disputing whether an assignment of a mortgage deed was valid as to a later purchaser of property); see also Attorney's Title Guaranty Fund v. Town Bank, 2014 WI 63, ___ Wis. 2d ___, ___N.W.2d ___ (disputing whether the proceeds of a legal malpractice claim could be assigned).

[4] Restatement (Second) of Contracts § 317 (quoted by majority op., ¶41 (emphasis added)).

[5] See 9 Corbin on Contracts § 47.7, at 147-48 (rev. ed. 2007) ("[I]n the absence of statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment. It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee."). See also Restatement (Second) of Contracts § 2 cmt. b. ("A promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct.").

words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient."[6]  The assignment requires only that "the obligee <u>manifest an intention</u> to transfer the right to another person without further action or manifestation of intention by the obligee."[7]

¶65 The phrase "<u>manifestation of intention</u>" is a basic concept in contract formation in the Restatement (Second) of Contracts.  The phrase "adopts an external or objective standard for interpreting conduct; it means the external expression of intention as distinguished from undisclosed intention."[8]

¶66 To determine the parties' "manifestation of intention," the courts apply other well-accepted rules of contract interpretation:  "We interpret a contract to give 'reasonable meaning to each provision and without rendering any portion superfluous.'"[9]  "A writing is interpreted as a whole"[10] and words "are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight."[11]

---

[6] 29 Richard Lord, <u>Williston on Contracts</u> § 74:3 (4th ed. 2003).

[7] Restatement (Second) of Contracts § 324 (1981) (emphasis added).

[8] Restatement (Second) of Contracts § 2, cmt. b.

[9] <u>Sonday v. Dave Kohel Agency, Inc.</u>, 2006 WI 92, ¶21, 293 Wis. 2d 458, 471, 718 N.W.2d 631 (internal quotation marks & citation omitted).

[10] Restatement (Second) of Contracts § 202(2).

[11] Restatement (Second) of Contracts § 202(1).

¶67 "Because the scope of retainer agreements varies from attorney to attorney and case to case," inquiries about the meaning of a retainer and fee allocation agreement between an attorney and a client "are necessarily fact intensive."[12]

¶68 The meaning given to words "depends to a varying extent on the context and on the prior experience of the parties."[13] In other words, the essence of the meaning of the words of a contract is found in how a reasonable person would understand the terms, having in mind the context of the transaction. Our courts interpret contracts to give them "common sense"[14] and "realistic"[15] meaning.

¶69 When there is an ambiguity, the courts look to extrinsic evidence to resolve the parties' intent.[16] Extrinsic evidence can include the conduct of the parties, their negotiations before and after the execution of the documents,

---

[12] Gorton v. Hostak, Henzl & Pichler, S.C., 217 Wis. 2d 493, 505, 577 N.W.2d 617 (1998).

[13] Restatement (Second) of Contracts § 20, cmt. b.

[14] See D. Canale & Co. v. Pauly & Pauly Cheese Co., 155 Wis. 541, 145 N.W. 372 (1914) (interpreting a contract's place of performance clause by viewing the acts of the parties "from a common sense standpoint"); Mikula v. Miller Brewing Co., 2005 WI App 92, ¶22, 281 Wis. 2d 712, 701 N.W.2d 613 (interpreting an insurance contract using a "common sense" reading of the text).

[15] See Bradish v. British Am. Assur. Co. of Toronto, Canada, 9 Wis. 2d 601, 604-05, 101 N.W.2d 814 (1960) (interpreting a contract under the more "realistic" connotation of its terms) (citing Travelers Fire Ins. Co. v. Whaley, 272 F.2d 288, 290-91 (10th Cir. 1959)).

[16] Majority op., ¶39 (quoting Town Bank v. City Real Estate Development, LLC, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476.

the acts and deeds in connection with surrounding circumstances, and their words.[17]

                                        II

¶70  I now apply these interpretive aids to the text of the fee agreement.

¶71  I have attached a true and correct copy of the fee agreement to give the full text of the agreement.

¶72  The text of the fee agreement at issue is not derived from a legal form book.  It is written in plain English, a practice that should be commended.[18]

¶73  The text of the fee agreement, giving meaning to each provision read separately and to the text read as a whole, clearly manifests an intention in plain English that the attorney will look to the defendant for attorney fees in some circumstances, and to the client in other circumstances.

¶74  The circuit court interpreted the agreement as I do. The circuit court declared:

---

[17] See Kernz v. J.L. French Corp., 2003 WI App 140, ¶10, 266 Wis. 2d 124, 667 N.W.2d 751.

[18] See, e.g., Yauger v. Skiing Enters., Inc., 206 Wis. 2d 76, 87 & n.2, 557 N.W.2d 60 (1996) (noting that negligence waivers in contracts "should be preceded by a clear, not misleading, heading and should not be written in legal jargon"); Commercial Union Midwest Ins. Co. v. Vorbeck, 2004 WI App 11, ¶¶46-49, 269 Wis. 2d 204, 674 N.W.2d 665 (Brown, J., concurring) (deploring the use of jargon in insurance contracts and citing Wis. Stat. § 631.22, which requires that a consumer insurance policy be "written in commonly understood language"); Pietroske, Inc. v. Globalcom, Inc., 2004 WI App 142, ¶9, 275 Wis. 2d 444, 685 N.W.2d 884 (noting that whether a contract term or condition is "in plain English" bears on whether it is unconscionable).

> The fee-shifting provision addresses with whom the right to collect attorney fees vests. It transfers the authority from Betz to Attorney Megna. It provides Attorney Megna with the authority to seek attorney fees from the Defendant if Betz succeeds with his Wis. Stat. § 100.18 claim at trial or during settlement with Diamond Jim's. Thus, Attorney Megna may certainly have the right to seek attorney fees in the appropriate situation.

The circuit court was correct.

¶75 The words of the agreement itself support this interpretation.

¶76 The agreement is divided into several parts, with a bold-faced, capitalized heading preceding each part. Each part of the fee agreement explains the allocation of attorney fees under a particular set of circumstances.

¶77 The headings are descriptive of four various circumstances under which fees are to allocated: **"FEE SHIFTING,"** **"SETTLEMENT PRIOR TO LAWSUIT,"** **"COSTS AND EXPENSES,"** and **"TERMINATION."** The purpose of this agreement is to establish when the client pays the attorney's fees, and when the defendant pays the attorney's fees.

¶78 The words that manifest an intention to give the attorney the right to collect attorney's fees are in the part labeled **"FEE SHIFTING."** The agreement explicitly uses the words **"FEE SHIFTING"** and explicitly refers to the attorney fee shifting statute, Wis. Stat. § 100.18.

¶79 The agreement states under the heading **"FEE SHIFTING"** the following:

**FEE SHIFTING**

I understand that Sec. 100.18, Wis. Stats., _____ is a fee shifting statute. This means if I win at trial

7

or settle my case during litigation, the defendant is <u>usually</u> responsible for paying my attorney fees based on my attorney's hourly rate. I understand that the Law Offices of Vince Megna is accepting my case with the agreement that it will look to the defendant for payment of attorney fees pursuant to the fee shifting provision once a lawsuit has been filed (emphasis added).

¶80 The **"FEE SHIFTING"** provision unqualifiedly states the circumstances under which the attorney will pursue the attorney fees from the defendant: In exchange for the law firm's agreement to take the case, the client and attorney agree that the attorney "<u>will</u> look to the defendant for payment of attorney fees pursuant to the fee shifting provision once a lawsuit has been filed" (emphasis added).

¶81 The **"FEE SHIFTING"** provision states that the defendant is usually responsible for paying the client's attorney's fees and that the attorney "<u>will</u>" pursue fees from the defendant, not that the attorney <u>may</u> or <u>could</u> do so. Obviously, the attorney cannot look to the defendant for statutory attorney's fees unless the client agrees that the fees belong to the attorney and not the client. By signing the agreement, the client agrees to this arrangement.

¶82 The language in the **"FEE SHIFTING"** provision states, in plain English, the basic terms of the transfer (assignment) of a statutory fee award in litigation from the client to the lawyer and meets all the requirements of an assignment:

- Who is entitled to statutory fees? The client.
- Who gets the statutory fees? The attorney.

8

- What attorney fees are being transferred?  "[P]ayment of attorney fees pursuant to the fee-shifting statute once a lawsuit has been filed."
- Is there additional action or manifestation of intention required by the client?  No.

¶83 The majority opinion, ¶42, dismisses the **"FEE SHIFTING"** provision as "qualified statements" that "cannot be fairly characterized as an assignment of Betz's statutory right to recover fees."  Majority op., ¶42.[19]  Notably, the majority opinion does not offer which words "qualify" the last sentence, which states that in exchange for taking the case, the attorney will pursue attorney fees from the defendant.

¶84 Unable to provide a qualifier for the key last sentence of the **"FEE SHIFTING"** provision, the majority opinion, ¶42, instead focuses on the word "usually" in the second sentence, which states that if there is litigation, "the defendant is usually responsible for paying my attorney fees based on my attorney's hourly rate" (emphasis added).

¶85 The word "usually" in the second sentence is a correct non-legalese statement of the law.  A court usually holds the

---

[19] The majority opinion reads at ¶42 as follows:

The terms of the fee agreement indicate that Betz understood that "the defendant is usually responsible for paying" attorney's fees in suits under Wis. Stat. § 100.18.  The agreement further provided that Betz's attorneys would "look to the defendant for payment of attorney fees pursuant to the fee[-]shifting provision once a lawsuit has been filed."  These qualified statements, however, cannot be fairly characterized as a written assignment of Betz's statutory right to recover fees.

defendant liable for the plaintiff's attorney fees based on the attorney's hourly rate as stated in the fee agreement. But courts do not always do so.

¶86 The real problem the fee agreement faces in the majority opinion is that the text of the **"FEE SHIFTING"** provision is not in the typical formalistic assignment language the majority expects. It does not use the legalese of generic boilerplate forms for assignments, nor does it use the legal jargon of "assign" or "transfer."

¶87 "[O]ur profession disdains plain speech."[20] Judges would probably better understand the agreement in the instant case if it were drafted in traditional legalese assignment language used in legal form guides that read something like the following:

> In exchange for value received, I, _____, of _____ [address], as assignor, assign and transfer to _____, of _____[address], as assignee, assignee's legal representatives and assigns, for assignee and their use and benefit, any and all . . . .[21]

---

[20] United States v. Collins, 510 F.3d 697, 699 (7th Cir. 2007).

[21] 1 Jay E. Grenig, Wisconsin Legal Forms § 8:24 (updated 2014) (available on Westlaw).

In another recent case, Attorney's Title Guaranty Fund v. Town Bank, 2014 WI ___, ___ Wis. 2d ___, ___ N.W.2d ___, similar assignment language was used after a detailed listing of various legal malpractice claims:

> Now therefore, in order to induce [the assignor] to loan [the assignee] $195,000.00, pursuant to the provisions of a certain Mortgage Note . . . , [the assignor] hereby assigns and transfers his interest in . . . the proceeds resulting from each of the above

10

¶88 In contrast, the client probably better understands the plain English version Attorney Megna used, which states that Megna, not the client, gets statutory fees from the defendant in litigation.

¶89 The majority opinion ignores the rule of interpretation that no particular magic words are needed to manifest an intention to assign. Instead, the majority opinion sends a message to attorneys who represent clients in cases where fee-shifting statutes apply: use legalese, not plain English. The majority opinion seems to endorse attorneys who use the legalese version of assignment, in which the client "in exchange for valuable consideration, hereby assigns and transfers the right to pursue attorney's fees, pursuant to [statute], to [attorney] of [address] and all [attorney's] legal assigns and heirs" and so forth.

¶90 The majority opinion ignores the rule of interpretation that requires us to give reasonable meaning to each word of the contract. What reasonable meaning does the **"FEE SHIFTING"** provision have if it is not an assignment of rights to legal fees in the event of a lawsuit? The majority opinion renders this language meaningless and superfluous.

¶91 Other provisions of the fee agreement support interpreting the **"FEE SHIFTING"** provision as assigning to the attorney the right to collect attorney's fees from the defendant if there is litigation. The agreement repeatedly treats the

---

described Claims to [the assignee] together with its successors and assigns . . . .

attorney, not the client, as the owner of the attorneys fees paid by the defendant and awarded under the fee shifting statute when litigation ensues. See, for example, the following:

- I [the client] understand that the Law Offices of Vince Megna will <u>charge the other side</u> its current rates that are then charged at the time of request for payment of its fees. [**"HOURLY RATE"**] (Emphasis added.)

- In addition to all other fees <u>paid to the Law Offices of Vince Megna by the other side</u>, I agree to pay the Law Offices of Vince Megna . . . . [**"ADDITIONAL RECOVERY"**] (Emphasis added.)

- In addition to all other fees <u>paid to the Law Offices of Vince Megna by the other side</u>, I agree to pay the Law Offices of Vince Megna **40% of any punitive damages recovered**, whether through settlement or judgment. [**"PUNITIVE DAMAGES"**] (Emphasis added.)

- If a settlement is reached prior to a lawsuit being filed . . . the defendant may not be responsible for payment of my attorney fees. In this event, the Law Offices . . . agrees to charge a flat rate attorney fee in the amount of _____ [left blank] [**"SETTLEMENT PRIOR TO LAWSUIT"**]

¶92 In each instance, the agreement treats the attorney, not the client, as the holder of the right to attorney's fees paid by the defendant.

¶93 The fee agreement sets forth various fee allocations under differing circumstances. The majority opinion asserts that these provisions for fee allocation under circumstances other than litigation "provide evidence that Betz did not assign his right to statutory attorney's fees to Megna in the fee agreement." Majority op., ¶43.[22]

_____

[22] The majority opinion reads at ¶43 as follows:

¶94 The majority does not say, and I cannot figure out, why a provision requiring Betz to pay fees or costs under certain circumstances (for example, if no lawsuit were filed) means that "principles of contract law militate against finding that Betz assigned his right to statutory attorney's fees to Megna." Majority op., ¶43.

¶95 The assignment of attorney fees is thus effective under certain circumstances; the assignment does not come into play should certain other circumstances come to pass. There is nothing unusual about this arrangement.

¶96 I conclude, as did the circuit court, that the text of the **"FEE SHIFTING"** provision and the text of the agreement as a whole demonstrate a manifest intention to assign the claim to legal fees under Wis. Stat. § 100.18 to the attorney in the event of litigation.

---

The fee agreement further provides for a number of circumstances where Betz might have to pay for Megna's fees or costs himself. For example, if the case had settled prior to the filing of the lawsuit, Betz would have had to pay a flat rate for Megna's fees. Similarly, if Betz had declined to settle the case on terms his attorneys "deem[ed] reasonable," he would have had to immediately pay all of Megna's costs up to that point and continue to pay further costs as they become due. Finally, the agreement provided that if either Betz or his attorneys terminated the attorney-client relationship, Betz would be responsible for paying both Megna's fees and costs. These provisions provide evidence that Betz did not assign his right to statutory attorney's fees to Megna in the fee agreement. As a result, traditional principles of contract law militate against finding that Betz assigned his right to statutory attorney's fees to Megna.

III

¶97 This interpretation is supported not only by the text but also by the context in which the fee agreement was executed and operates, namely the Wisconsin lemon law allowing claims for defective cars and Wis. Stat. § 100.18 governing suits for misrepresentation. Words in a contract "are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight."[23]

¶98 A car purchase, next to a home purchase, is the largest single expenditure of many people. When a consumer purchases a defective car, the lemon law statutes and Wis. Stat. § 100.18 are designed to give the consumer a remedy. Both statutes are fee-shifting statutes that modify the American rule regarding who pays the attorney.[24] Ordinarily in the United States the prevailing party does not collect attorney fees from the opposing party.[25] Thus plaintiffs in relatively small-dollar-amount consumer cases often cannot afford to seek relief if they have to incur and pay attorney fees. The lemon law and Wis. Stat. § 100.18 address this fact of life.[26]

¶99 In cases governed by the lemon law and Wis. Stat. § 100.18 (explicitly referenced in the **"FEE SHIFTING"**

---

[23] Restatement (Second) of Contracts § 202 (1).

[24] See Cook v. Pub. Storage, Inc., 2008 WI App 155, ¶85, 314 Wis. 2d 426, 761 N.W.2d 645.

[25] Winkleman v. Beloit Mem'l Hosp., 168 Wis. 2d 12, 28, 483 N.W.2d 211 (1992).

[26] See majority op., ¶¶26-29.

14

provision), payment for the plaintiff's attorney fees shifts from the plaintiff to the defendant.

¶100 The legislature has expressed this <u>vital</u> public policy of the state favoring fee shifting in lemon law and misrepresentation cases to ensure the rights of consumers: "Fee-shifting statutes, and the attorneys who represent clients in such cases, are thus <u>vital</u> to ensuring that the rights of consumers are vindicated in court."[27]

¶101 Attorney Megna holds himself out as, and is known as, one of the few attorneys in Wisconsin who takes lemon law cases.[28]

¶102 This is the context in which the fee agreement at issue was executed. Indeed, the majority opinion, ¶¶26-29, discusses the importance that the legislature has given to the fee-shifting statutes in enforcing the consumer-protection laws at issue in the instant case.

¶103 The majority opinion acknowledges, and rightly so, that the defendant should not be able to circumvent the fee-shifting statute's public policy by cutting attorneys out of their ability to collect attorney's fees through unfettered out-of-court settlement:

> While we recognize the important right of a client to settle, if a client has an unfettered right to settle without counsel's involvement when a fee-shifting statute is implicated, otherwise qualified attorneys

---

[27] Majority op., ¶28 (emphasis added).

[28] <u>See</u> majority op., ¶29 n.10 ("For example, the record reflects that Megna is one of only a handful of attorneys in Wisconsin who takes automobile consumer rights cases.").

will be discouraged from practicing in this vitally important area of law.

Majority op., ¶29. I agree with the majority opinion's analysis of the legislature's mandated public policy.

¶104 Why then does the majority opinion ignore the legislative declaration of public policy in deciding the instant case? The majority opinion does not say.

¶105 In sum, when I apply the rules of contract interpretation, I conclude that the text and context of the entire fee agreement demonstrate that the agreement assigned the statutory fees from the client to the attorney in the circumstances listed in the **"FEE SHIFTING"** provision, namely litigation.

IV

¶106 A few other matters regarding contract interpretation emerge in the majority opinion.

¶107 In the end, the majority opinion never truly decides whether there are competing reasonable interpretations of the fee agreement requiring a court to look beyond the four corners of the contract to interpret its meaning. Instead, the majority opinion waffles.

¶108 On the one hand, the majority opinion can be interpreted as treating the agreement as unambiguous, looking only to the text and never citing any extrinsic evidence to determine the intent of the parties.

¶109 On the other hand, the majority opinion views the fee agreement as potentially "unclear" on the subject of the assignment of attorney's fees. Majority op., ¶48.

16

¶110 If the fee agreement is "unclear," the intention of the parties is a question of fact to be determined by the finder of fact after being presented with extrinsic evidence.

¶111 I would recognize the fee agreement for what it is, an unambiguous assignment of the right to attorney's fees from Betz to Attorney Megna.

¶112 Furthermore, the majority opinion apparently assumes, without discussion, that the fee agreement is an integrated contract.

¶113 Yet this contract on its face is not complete and therefore is not fully integrated. There is a blank in the fee agreement that is not filled in. The amount Attorney Megna will charge the client in the **"SETTLEMENT PRIOR TO LAWSUIT"** provision is left blank.

¶114 A blank in a contract on a material matter indicates that the contract is not fully integrated and that extrinsic evidence may be used to understand the intention of the parties.

¶115 Rather than looking to extrinsic evidence, as dictated by our rules of contract interpretation for unclear or non-integrated contracts, the majority opinion asserts that the burden is on the attorney "to state clearly the terms of the fee agreement and to address specifically the allocation of court-awarded attorney's fees." Majority op., ¶48 (quoting Gorton v. Hostak, Henzl & Pichler, S.C., 217 Wis. 2d 493, 508, 577 N.W.2d 617 (1998) and citing Ziolkowski Patent Solutions Grp., S.C. v. Great Lakes Dart Mfg., Inc., 2011 WI App 11, ¶13, 331 Wis. 2d 230, 794 N.W.2d 253).

17

¶116 In the Gorton case, the fee agreement was a contingent fee agreement. The fee agreement was silent regarding the allocation of reasonable attorney fees under Wis. Stat. § 100.18. Statutory attorney fees were awarded. The Gorton court held that the distribution of the statutory attorney fee award was governed by the contract between the parties.[29] The contingent fee agreement in Gorton did not "address specifically" the allocation of statutory attorney's fees, and the attorney did not receive statutory fees.

¶117 In contrast, in the instant case the **"FEE SHIFTING"** provision does exactly what the fee agreement in Gorton did not do——the fee agreement at issue addresses specifically the allocation of statutory attorney fees.

¶118 Furthermore, in Gorton the dispute about who was entitled to the statutory attorney fees pursuant to the fee agreement between the attorney and the client was between the attorney and the client. The attorney and client were adversaries. To the extent that the agreement between the attorney and client in Gorton did not specifically address the allocation of statutory attorney fees, the attorney, who had obviously drafted the agreement and who had legal expertise, lost.

¶119 In the instant case, no dispute exists between the attorney (Megna) and the client (Betz) that, pursuant to their fee agreement, the attorney, not the client, has the right to

---

[29] Gorton, 217 Wis. 2d at 508.

18

any statutory attorney fees.[30]  The dispute in the instant case about who is entitled to statutory attorney fees is between Megna, as Betz's attorney, and Diamond Jim's, as the potential payor of the statutory attorney fees.  Thus, the rule stated in Gorton governing interpretation of a fee agreement in a dispute between the attorney and client does not apply in the present case.

¶120 The interpretation of the fee agreement proposed by the majority opinion is, unfortunately, troubling on too many different fronts.

¶121 For the foregoing reasons, I dissent.  I would remand the case to the circuit court to determine whether the defendant had notice of the assignment.

---

[30] Megna continues to represent Betz and has averred that he has made no claim and plans to make no claim against his client.

## CONTRACT TO EMPLOY THE LAW OFFICES OF VINCE MEGNA

### MISREPRESENTATION

The undersigned *Randy Betz*, hereby employs the Law Offices of Vince Megna for the purpose of representation in the following case:

*Diamond Jim's Auto Sale*

I understand that I do not have to pay any attorney fees unless my attorneys recover money for me in this case.

### FEE SHIFTING

I understand that Sec. 100.18, Wis. Stats., _____ is a fee shifting statute. This means if I win at trial or settle my case during litigation, the defendant is usually responsible for paying my attorney fees based on my attorney's hourly rate. I understand that the Law Offices of Vince Megna is accepting my case with the agreement that it will look to the defendant for payment of attorney fees pursuant to the fee shifting provision once a lawsuit has been filed.

### HOURLY RATE

The Law Offices of Vince Megna maximum hourly rate is $395.00.

### Of Counsel:

The law firm of Aiken & Scoptur, S.C. maximum hourly rate is $600.00.

I understand that the Law Offices of Vince Megna will charge the other side its current rates that are then charged at the time of request for payment of its fees.

### ADDITIONAL RECOVERY OVER REFUND (IF APPLICABLE)

In addition to all other fees paid to the Law Offices of Vince Megna by the other side, I agree to pay the Law Offices of Vince Megna 33 1/3% of any additional amount recovered over a refund, whether through settlement or judgment.

_____ The additional recovery over refund provision applies to my case only if this line is checked.

**EXHIBIT**
B

1

## PUNITIVE DAMAGES (IF APPLICABLE)

In addition to all other fees paid to the Law Offices of Vince Megna by the other side, I agree to pay the Law Offices of Vince Megna 40% of any punitive damages recovered, whether through settlement or judgment.

___X___ The punitive damages provision applies to my case only if this line is checked.

## SETTLEMENT PRIOR TO LAWSUIT

If a settlement is reached prior to a lawsuit being filed in my case, I understand that the defendant may not be responsible for payment of my attorney fees. In this event, the Law Offices of Vince Megna agrees to charge a flat rate attorney fee in the amount of _____.

## COSTS AND EXPENSES

I understand that the Law Offices of Vince Megna will need to pay costs and expenses. In the event my case is lost through no fault of my own, I understand that the Law Offices Vince Megna will not bring a claim against me for these costs and expenses.

I understand that if I do not accept a settlement that my attorneys deem reasonable and my case continues without settlement, I will be required to immediately reimburse the Law Offices of Vince Megna for all costs and expenses paid up until that point and then be responsible to pay all further costs and expenses as same become due.

## TERMINATION

I understand that my attorney has the right to "terminate" me as a client. The Law Offices of Vince Megna will be entitled to fees for the work done at its hourly rate and its costs, not to exceed 33 1/3 % of my gross recovery.

I understand that I have a right to terminate my attorneys. However, if I do so, I will be responsible for the Law Offices of Vince Megna fees and costs due on the date of termination, not to exceed 33 1/3% of my gross recovery.

2

## INTERNET SOCIAL NETWORKING WEBSITE

I understand that, given the transparency of information disseminated via the Internet, any information that I put on social networking websites (including but not limited to Facebook, MySpace, Twitter and LinkedIn) may be relevant to my case. Therefore, I agree to notify my attorneys of my use of any such social networking websites, to provide my attorneys with access to these site(s) so that they may review my online content to ensure that the content does not harm my case, and to remove any content as my attorneys deem necessary.

Dated at Milwaukee, Wisconsin this ___12ᵗʰ___ day of ___February___ 2010.

_____
Client

APPROVED:

By:_____
Law Offices of Vince Megna

3